# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

DAVID R. MERGES and
JULIE L. MERGES,

              Plaintiff(s),

        v.

ARAMARK CORPORATION, ARAMARK
MANAGEMENT SERVICES LIMITED
PARTNERSHIP and ARAMARK
INTERMEDIATE HOLDCO CORPORATION,

              Defendant(s).

**DECISION AND ORDER**
08-CV-6250

## Preliminary Statement

On January 9, 2007, plaintiff David Merges slipped and fell on a snow covered and icy portion of Churchville-Chile intermediate school's walkway.  The fall caused plaintiff to suffer serious and permanent injuries.  On May 13, 2008, Merges commenced this personal injury action in New York State Supreme Court, Ontario County.  Based on diversity jurisdiction, the action was removed to this Court on June 9, 2008.  See Docket # 1.  Currently pending before the Court is defendants' motion for summary judgment.[1] (Docket # 32).  On May 5, 2011, a hearing was held and arguments were heard from the parties.  For the reasons that follow, defendants' motion for summary judgment is denied.

## Relevant Facts

Plaintiff David Merges ("Merges" or plaintiff) was the

---

[1] This dispositive motion is being heard by the undersigned by consent of the parties pursuant to 28 U.S.C. Section 636(c).  See Docket # 51.

Director of Pupil Services at the Churchville-Chili Central School District ("CCSD").  His office was on the grounds at the CCSD intermediate school located at 139 Fairbanks Road, Churchville, New York.  On January 9, 2007 at approximately 9:00 a.m., a student at the school pulled the building's fire alarm and, as a result, the building's occupants – including Merges – were forced to evacuate outside to the exterior of the building pursuant to the school's established fire alarm evacuation process.  See Affidavit of David R. Merges (hereinafter "Merges Aff.") attached as Exhibit "G" to Docket # 39 at ¶ 3.  After arriving outside the building, Merges met up with fellow CCSD employees and walked to the front of the building.  Merges observed that snow and ice had been cleared from certain areas of the school's grounds; namely, the area directly in front of the main entrance to the school.  Id. at ¶ 4.  Merges also noticed that the sidewalks and walkways in front of the building had been treated with an ice melting substance such as salt.  Id.; see also July 7, 2009 Deposition Transcript of David Merges (hereinafter "Merges Dep.") attached as Exhibit "I" to Affidavit of Terence P. O'Connor annexed to Docket # 32 at p. 66 ("It [salt] was scattered all over the front entrance on the sidewalk.").

While assisting students with evacuating in the front of the school building, Merges learned that a fellow teacher, Hillary Grana, had slipped and fallen near the back of the school at a location referred to in the record as the "south entrance."  The

Principle of the intermediate school, John Bellini, asked Merges if he would find and assist Ms. Grana, and Merges agreed.  See Affidavit of David R. Merges (hereinafter "Merges Aff.") attached as Exhibit "G" to Affidavit of William P. Smith, Jr., Esq. (Docket # 39) at ¶ 5.  In order to get to the back of the school where Ms. Grana was located, it was necessary for Merges to walk around the side of the building which had "an established path."  Id. at ¶ 6. According to Merges, no snow removal efforts had been taken to clear snow and ice from the path or to treat the path with an ice melter such as salt and, as a result, Merges walked through snow and over ice to get to the south entrance.  As Merges arrived at the back exit doors of the building he noticed that, unlike the front entrance, the walkways surrounding the south entrance had not been treated with an ice-melting substance.  Merges testified:

> There was no salt on it.  It wasn't – when I went out of the front of the building earlier, there was no – you could tell that [it] had attention to it.  There was salt down, it looked like somebody had paid attention to that as far as making it safe to walk on and to be – you know, have kids go out on.  Where I was walking and falling or fell, that looked like there was no attention given to it.

Merges Dep. at p. 83; see also Merges Aff. at ¶ 7 ("Unlike the walkways in the front of the Intermediate School building, the walkways adjacent to the back of the Intermediate School building had not been treated by the Defendants with a substance to melt the ice on the path.").

3

As Merges turned the corner he fell hard on the walkway hitting his head and losing consciousness. Merges Dep. at p. 82. Merges maintains that it was not snowing at the time he fell, but there was "a buildup of ice" on the walkway. Merges Aff. at ¶¶ 11, 17. Merges suffered severe and permanent injuries as a result of the fall. Id. at ¶¶ 18-19.

At the time of Merges's fall, a "Management Services Agreement" existed between defendant Aramark and the CCSD. See Exhibit "D" attached to Docket # 32. Pursuant to the contract, Aramark "agreed to perform Custodial, Plan Operations and Maintenance, and Grounds Management Services on [CCSD's] premises." See id. In return, CCSD agreed to pay Aramark $200,340.00 per year for five years (total payments exceeding one million dollars) in exchange for Aramark providing managerial services for custodial, plant operations, maintenance and grounds operations. Id.

The parties dispute the parameters of the contract and, specifically, whether Aramark agreed to assume control and responsibility of CCSD's grounds maintenance operations. Aramark asserts that the contract it had with the School District was only "consultative" and summary judgment should be granted in its favor because "the proof demonstrates that ARAMARK never undertook any steps to remove snow and/or salt on the premises. Rather, the district performed those functions." See Affidavit of Terence P. O'Connor, Esq. (hereinafter "O'Connor Aff.") annexed to Docket # 32

at ¶¶ 11, 14.  According to Aramark, School District employees did the snow removal work and since the School District "retained significant control over" its land, premises and facilities, it "retained its common law duty as landowner to maintain the premises in a safe condition for Merges and others."  Id. at ¶ 13.  Aramark contends that pursuant to its contract with the School District, it was "to lend its expertise to the district as to facility management.  ARAMARK was never contracted to, nor did it ever undertake the snow and ice removal processes for the district."  Id. at ¶ 14.  Aramark asserts that its agreement with the School District only "called for ARAMARK's general oversight and expertise in facility management," and did not call for Aramark to be responsible for the snow and ice removal processes at the School District's facilities.  Id. at ¶ 18.  Aramark asserts that CCSD retained significant control over the premises, and Aramark did not assume responsibility for snow and ice removal and "owed no duty to Merges."  Id. at ¶ 28.

Plaintiffs, on the other hand, assert that Aramark's contract with CCSD confirms that defendants "completely and entirely assumed exclusive control over the management and operation of the District's buildings, facilities, and grounds . . . including ground maintenance and inspections and the treatment and removal of snow, ice, and slippery conditions."  See Affidavit of William P. Smith, Jr., Esq. (hereinafter "Smith Aff.") (Docket # 39) at ¶ 11.

Plaintiffs contend that pursuant to the terms of the contract, "Defendants agreed to establish a snow removal plan, which involved removing snow and ice from entrances, walks, roads, and parking lots on the District property, which they did not do." Id. at ¶ 15.  Plaintiffs maintain that the contract placed defendants "in complete and exclusive control of grounds maintenance for the safety of the District's employees, including Mr. Merges." Id. at ¶ 16.  Plaintiffs assert that it was Phillip Behe's, Aramark's on site Manager of Facilities, "duty to maintain safe sidewalks at the District's Premises," as he "was in a position to exclusively create and implement the entire snow and ice removal process on the District's premises" and he "unilaterally trained and supervised the service employees, such as Kenneth Tanner, with respect to grounds maintenance." Id. at ¶¶ 21-22.  Plaintiffs argue that the School District "did not retain any responsibility or right to direct, control, or act to remove ice [and] snow at the premises in light of the Agreement" and, as a result, "Defendants owed Mr. Merges a duty of care" because "it entirely displaced the District[']s duty to maintain the premises in a safe manner." Id. at ¶¶ 23-24.  Plaintiffs contend that any School District personnel that were involved in grounds maintenance were operating under the direction and control of Aramark's Philip Behe.  Id. at ¶ 22.

Assuming the Court finds that defendants owed plaintiff a duty of care under the contract, defendants alternatively argue they are

entitled to summary judgment because there was a "storm in progress" and they did not have actual or constructive notice of the dangerous condition. Defendants argue that climatological data analyzed by Howard Altschule, a certified meteorologist, demonstrates that on January 9, 2007 between 9:10 a.m. and 9:20 a.m. (the approximate time that Merges fell) "light snow was falling over 139 Fairbanks Road, Churchville, New York" and "[t]he snow accumulated because of the snow's steady and consistent intensity, and because the ground was colder as a result of the below freezing temperatures that occurred that morning."  See Affidavit of Howard Altschule (hereinafter "Altschule Aff.") (Docket # 33) at ¶ 6.  Altschule found that "[a]ny snow that was present on the ground at the time of the accident had only accumulated since 8:23 a.m., which was a very short time prior to the accident."  Id.  Altschule concluded "with a reasonable degree of meteorological certainty that a new storm was in progress at the time of the January 9, 2007 accident at issue."  Id. at ¶ 10.

In response, plaintiffs argue that there was no storm in progress and, in any event, defendants had notice of the slippery conditions of the walkway where Merges fell.  According to plaintiffs, the fact that defendants employed snow and ice removal efforts and treated the sidewalks at the front entrance of the intermediate school but failed to provide similar efforts on the pathways on the sides of the buildings or at the building's south

entrance, raises triable issues of fact as to whether plaintiff's fall was the result of any "storm in progress."

## Discussion

**Summary Judgment Standard**: Summary judgment shall only be granted if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the evidence presented, it is important to remember that all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought. Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The burden of showing the absence of any issue of material fact rests with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**Breach of a Duty of Care:** The parties do not dispute that New York substantive law is controlling in this diversity action. In order to establish negligence under New York law, the plaintiff must show by a preponderance of the evidence "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333 (N.Y. 1981).

8

"Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." Espinal v. Melville Snow Contractors, Inc., 98 N.Y.2d 136, 138 (N.Y. 2002); see also Palka v. Servicemaster Mgmt. Servs. Corp., 83 N.Y.2d 579, 584 (N.Y. 1994)("[A] duty of reasonable care owed by a tortfeasor to an injured party is elemental to any recovery in negligence."). The existence of a duty of care is usually a question of law for the Court to determine.  Palka, 83 N.Y.2d at 585.

The first issue before the Court is whether Aramark owed plaintiff David Merges a duty of care, since his personal injuries allegedly arose from Aramark's alleged negligent or failed performance of its contractual duties owed to the School District. In many cases, the existence of a duty running from the defendant to the plaintiff is not in dispute.  Such is not the case here. Under New York law a contracting party like Aramark generally owes no duty of care to a non-contracting party like David Merges. Church v. Callanan Indus., Inc., 99 N.Y.2d 104, 111 (2002); Espinal v Melville Snow Contractors, Inc., 98 N.Y.2d at 139-41.  However, "New York recognizes three exceptions to this otherwise broad principle, and will impose a duty and thus potential tort liability arising out of the performance of contractual obligations when one of three factors is present." Doona v. Onesource Holdings, Inc., 680 F. Supp. 2d 394, 402 (E.D.N.Y. 2010).  The three exceptions

9

are:

> (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, launche[s] a force or instrument of harm; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely.

Id. (quoting Espinal, 98 N.Y.2d at 140).  Under the particular facts presented in the record here, I conclude that Merges meets the second and third Espinal exceptions and accordingly find that Aramark did owe a duty of care to Merges on January 9, 2007.

Although the two exceptions are factually related, I turn first to Aramark's argument that the contract between it and CCSD did not entirely displace the School District's duty to maintain the premises safely.  In sum, Aramark's argues that CCSD agreed to pay Aramark over a million dollars over five years for nothing more than "general oversight and expertise in facility management" (see O'Connor Aff. at ¶ 18) and hence Aramark can not be held liable to third parties like plaintiff for any negligence it may have committed in the snow and ice removal processes at the School District's facilities.

The Court does not find Aramak's argument persuasive.  A review of the contract as a whole supports a finding that the intent of the contract was to privatize the management and responsibility for maintenance of the District's facilities during the contract term.  In other words, a fair reading of the contract

10

confirms the parties intention to substitute Aramark for the
District as being the entity responsible for the overall management
and safety of the School District's grounds and facilities.  The
contract was comprehensive and gave Aramark exclusive
responsibility to control and manage the day to day facility
maintenance requirements of the School District's buildings and
grounds.  Pursuant to the terms of the contract Aramark was
required to provide and pay for an "<u>Operations</u> Team" Manager to
serve as "management of the custodial and maintenance departments
of the [School] District," including the location where Merges
fell.  <u>See</u> Exhibit "D" attached to Smith Aff. at pp. 3, 10.  The
contract required Aramark to "design <u>and implement</u>" standard
operating procedures with "a clean and safe environment" being a
"primary objective."  <u>Id.</u> at p. 11.  Aramark was contractually
required to advise <u>and implement</u> casualty prevention and control
procedures.  Aramark was contractually required to perform
"custodial duties," including setting the schedules for custodial,
maintenance and grounds employees and police outside grounds daily.
<u>Id.</u> at p. 13.  Similarly, Aramark was contracted to "develop,
<u>implement, and manage</u> an effective program of grounds maintenance
for the District," including a snow removal plan that included
requirements that "[s]now and ice will be cleared from entrances
[and] walks" on School District property, including the location
where Merges fell.  <u>Id.</u> at pp. 18, 21.  The contract also required

11

Aramark to conduct training of District employees with "an emphasis on safety" for those employees with maintenance responsibilities. Id. at p. 21.

To be sure, as Aramark points out, the contract required Aramark to consult with the School District officials before implementing many of its facility management operations.  But once the contract term began, the School District was relieved of its day to day responsibilities for supervising and controlling the custodial and maintenance departments of the District.  That the contract also required Aramark and CCSD to consult and cooperate in implementing the maintenance procedures installed by Aramark does not immunize Aramark from a finding that the intent and effect of the contract was to displace the School District's in-house supervision of grounds and facility management and substitute Aramark as having overall control and responsibility.  See Palka, 83 N.Y. 2d at 588.

Aramark also points to the fact that it was School District employees who actually performed the snow removal operations for the District as evidence that it had not entirely displaced the District's duty to maintain the premises safely.  Again, however, this argument misses the mark by minimizing Aramark's contractual responsibilities.  There can be no doubt that someone was in charge of and responsible for making sure that School District grounds were properly and safely maintained.  Aramark's efforts to disclaim

contractual responsibility for these functions is untenable. Indeed, the contract confirms it was Aramark's responsibility to make sure these essential duties were properly carried out. The fact that the contract permitted Aramark to utilize School District employees and equipment in carrying out its facility management responsibilities does not alter the answer to the question of who was in charge. Aramark was more than simply a "consultant" to CSSD facility maintenance operations. Aramark was paid hundreds of thousands of dollars each year to be in charge of and responsible for the day to day custodial and maintenance operations of the School District. See Palka, 83 N.Y. 2d at 585-86.

To the extent extrinsic evidence is necessary to assist in determining whether Aramark agreed to fully assume responsibility to maintain the premises safely, there is persuasive evidence in the record that support's the Court's finding. "The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning." Restatement (Second) of Contracts § 202 cmt. g (1981); see Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 118 (1913)("Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence."). Particularly revealing in this regard is the deposition testimony of Kenneth R. Tanner, who has been employed by CCSD as Head

13

Groundsman since 1994.  When he was first hired, Tanner reported to Mike Morris, CCSD's Superintendent of Buildings and Grounds. Tanner testified that when Morris retired in 2000, he was replaced by an outside third party, specifically Servicemaster Corporation. See March 1, 2010 Deposition Transcript of Kenneth R. Tanner (hereinafter "Tanner Dep.") attached as Exhibit "E" to O'Connor Aff. at p. 12.  Servicemaster placed its own employee at CCSD who held the title of "Director of Operations and Management."  Tanner testified that as CCSD's Head Groundsman he now reported to Servicemaster.  Tanner testified that Servicemaster's Director of Operations and Management (whose name Tanner could not remember) would "supervise" his work," "direct" his work, "oversee" his work, including "snow removal and ice treatment."   Id. at p. 13. Sometime later, Servicemaster employee Phillip Behe assumed the position as Tanner's supervisor.  Tanner testified that he reported to Behe  and that Behe would "direct" his work, "supervise his work" and "oversee" his work.  According to Tanner, after Behe was placed by Servicemaster at CCSD, Servicemaster was "bought out" by Aramark and Behe became an Aramark employee.  Despite the change in ownership, Tanner stated that the nature of his relationship with Behe did not change and Behe, as an Aramark employee, continued to "direct," "supervise" and "oversee" his work as Head Groundsman for CCSD.  Id. at pp. 14-15.  Tanner stated it was his understanding that Aramark was "hired to manage the grounds department, the

14

maintenance department, and the custodial staff." Id. at p. 18.
Tanner testified that in his job as Head Groundsman for CCSD, Behe
was his direct supervisor and that he ran through Mr. Behe any
determinations he made with respect to "salt, shovels and plows."
Id. at p. 111.  Tanner explained that if Behe told him to jump, he
jumped.  Id.  Tanner's testimony confirms the pervasive control,
supervision and responsibility the contract gave to Behe and
Aramark with respect to the management and safety of the School
District's grounds, including snow and ice removal processes where
plaintiff fell on January 9, 2007.

Based on much of the same evidence, the Court also finds that
plaintiff detrimentally relied on Aramark's continued performance
of the contract, including the obligation to keep the sidewalks and
pathways surrounding the school free from ice and snow.   The
obvious consequences of the agreement at issue here were "not
solely a matter between the parties to the contract."  Palka, 83
N.Y.2d at 586.   Rather, the contractual arrangements between
Aramark and CCSD "plainly affect the safety of all users of the
premises who are entitled to rely on the nonnegligent maintenance
services and repair responsibilities imposed by the contract." Id.

Here, the record supports a finding that Merges detrimentally
relied on Aramark's continued performance of its contractual duties
with the School District to maintain the intermediate school's
grounds, including snow and ice removal.  Specifically, plaintiff

15

David Merges avers that prior to his accident he was aware of the defendants' contract with the CCSD and "knew that the Defendants were contractually obligated to treat and remove snow and ice from the [intermediate school's] surrounding parking lots, roadways, walkways, byways, paths, steps, stairways, and entranceways." <u>See</u> Merges Aff. at ¶ 15.  Merges testified at his deposition that he had "dealings" with Behe and knew him to be an Aramark employee. "Pretty much anytime we needed any buildings and grounds or any maintenance things done in our office we would call Phil.  That was kind of what we were directed to do [by District Superintendent Anne Marie Spadafora], because Phil kind of had control of that. We were told to call him."  Merges Dep. at p. 87.  Specifically as to what role Behe had in keeping school sidewalks and walkways free of ice and snow, Merges testified: "My understanding was that Phil kind of had complete control of the scheduling and the – you know – allocation of staff and work crews to all the building and grounds' needs.  He would kind of set all that up and make those things happen."  Merges Dep. at p. 88; <u>see</u> <u>also</u> Merges Aff. at ¶ 16.  Merges asserts that it was his belief that "[o]nly the Defendants and not the CCSD had the duty or the right to address safety issues on the CCSD grounds," and with respect to snow and ice treatment and removal "Mr. Behe controlled the entire process." Merges Aff. at ¶ 16.  Merges avers that he "had the expectation that Defendants were in charge of and responsible for safety

inspections and maintenance of the District's premises." Id.

In sum, the nexus between Aramark's contractual duties and Merges's safety is not speculative or attenuated – it existed at the date and time and place of Merges's fall. Aramark had a contractual responsibility to manage the School District's property so as to keep it safe for teachers and students. Assuming that Aramark had notice of a dangerous condition on the property, it had the obligation under the contract to cause that dangerous condition to be remedied or run the risk of liability for reasonably foreseeable harm to others legitimately on the grounds they were required to manage. Based on the totality of the record, I find that plaintiff has established that he detrimentally relied on Aramark's contractual obligations to maintain the CCSD's grounds and, as a result, Aramark owed a duty of reasonable care to plaintiff.

Before moving to Aramark's alternative basis for summary judgment, it is important to distinguish the Court's finding of duty from any suggestion of liability. This Court has only determined that the comprehensive facilities management contract between CCSD and Aramark imposed a duty of care applicable to David Merges on January 9, 2007. The Court makes no finding or suggestion that the duty of care was breached or that any breach proximately caused Merges's injury. Those determinations are exclusively within the province of the finder of fact.

17

**<u>Storm in Progress</u>**: Having determined that Aramark owed a duty to plaintiff, the Court turns next to Aramark's alternative basis for summary judgment – invocation of the "storm in progress" defense.   Under the storm in progress defense "there is no liability for injuries related to falling on accumulated snow and ice until after the storm has ceased, in order to allow workers a reasonable period of time to clean the walkways." <u>Powell v. MLG Hillside Assocs., L.P.</u>, 290 A.D.2d 345 (1st Dept. 2002).   If a defendant establishes that the storm that has caused the hazardous condition was still "in progress" at the time of a plaintiff's slip and fall, the defendant did not, as a matter of law, have reasonable time in which to remedy the condition and can not be held liable for any negligence. <u>Id.</u> Once a defendant demonstrates a *prima facie* showing of the "storm in progress" defense, the defendant will be entitled to dismissal of the complaint at the summary judgment stage unless the plaintiff comes forward with evidence establishing the existence of a triable issue of fact. <u>Sanders v. Wal-Mart Stores, Inc.</u>, 9 A.D.3d 595 (3d Dept. 2004).

Here, Aramark relies on the expert opinion and report of meteorologist Howard Altschule, President of Forensic Weather Consultants in Albany New York, to demonstrate a *prima facie* showing of the "storm in progress" defense.   According to Altschule, "surface observations and Doppler radar images . . . establish that lake effect snow bands caused occasional light snow

18

to fall starting at 8:23 a.m through around 11:18 a.m." on January 9, 2007.  See Altschule Aff. at ¶ 5.  More specifically, Altschule opines that between 9:10 a.m. and 9:20 a.m. snow was falling over 139 Fairbanks Road in Churchville, New York, the location of Merges's fall.  Id. at ¶ 6.  Based on his review of the weather data, Altschule concluded "with a reasonable degree of meteorological certainty that a new storm was in progress at the time of the January 9, 2007 accident at issue in this lawsuit." Id. at ¶ 10.

For purposes of this summary judgment motion, the Court will assume that the Altschule affidavit and expert report upon which it is based satisfies Aramark's burden to establish a *prima facie* defense of a storm in progress on January 9, 2007.[2]  See Campagnano v. Highgate Manor of Rensselaer, Inc., 299 A.D.2d 714, 715 (3d Dept. 2002)("Defendants satisfied their prima facie burden of proving that there was a storm in progress at the time of the incident" where their meteorologist opined that a storm was in progress "within a reasonable degree of meteorological certainty.").  Accordingly, the Court turns to whether Merges has

---

[2] Plaintiffs have submitted an affidavit from meteorologist Kevin Williams in response to defendants' "storm in progress" argument.  Defense counsel objected to the Williams affidavit for several reasons, including the fact that it is "conclusory and without evidentiary value."  See Reply Affidavit of Terence P. O'Connor, Esq. (Docket # 41) at ¶ 18.  I agree and have given the Williams affidavit no weight in analyzing the storm in progress defense.

come forward with evidence establishing the existence of a triable issue of fact.

Viewing, as I must, the evidence in the light most favorable to plaintiff, the Court finds that the record contains evidence sufficient to create a triable issue whether the plaintiff's fall was the result of the storm in progress or was due to negligence independent of the "storm."  The evidence in the record appears undisputed that the hazardous ice conditions that were present in and around the south entrance were not present at the front entrance of the building.  Donald Duthe, an Associate Principal, testified that Aramark was aware that the south entrance was a designated exit route and that "we needed those back entrances cleared of snow and safe for an evacuation <u>at all times</u>."  <u>See</u> March 1, 201 Deposition Transcript of Donald Duthe (hereinafter "Duthe Dep.") attached as Exhibit "J" to Smith Aff. at p. 23 (emphasis supplied).  According to Duthe, periodic inspections of the grounds surrounding the facility had revealed problems in keeping the south entrance clear of ice.  Indeed, prior to the Merges's slip and fall, the school Principal, John Bellini, had notified Aramark's Phil Behe of the need for Aramark to be "more vigilant" and give "more rigid attention" to snow and ice problems at the south entrance.  On the day of his fall, however, Merges recalled that "unlike the walkways in the front of the Intermediate School building, the walkways adjacent to the Intermediate School

building had not been treated by the Defendants with a substance to melt the ice on the path." Merges's recollection was corroborated by the deposition testimony of other CCSD staff who were outside the school on January 9, 2007. Kathleen Daly, a fifth grade teacher, stated that both teachers and students were slipping and losing their footing as they exited the south entrance and that the walkways did not appear to have been treated with an ice melting agent. See March 1, 2010 Deposition Transcript of Kathleen Daly attached as Exhibit "I" to Smith Aff. at pp. 16-19. Donald Duthe testified that while the front entrance sidewalks had been treated before school opened on the morning of January 7, 2007, the south entrance sidewalks and pathways had not been given the same ice melting treatment. Duthe Dep. at pp. 33, 43. Duthe recalled the ice build-up near the south entrance to be clear and smooth. Duthe also testified that he was aware of five people slipping and falling on ice during the fire drill and all of them fell in the same south entrance area that Merges fell. Three of those who fell sought treatment by the school nurse. Duthe Dep. at pp. 31-34. The record before the Court does not indicate any student or staff member slipping and falling in the front entrance of the school building.

The foregoing evidence pays tribute to issues of fact as to whether it was the "storm" alone that caused Merges to slip and fall. A reasonable jury could conclude that Aramark was on notice

that both entrances needed to be treated for potential ice hazards in January and the failure to give the south entrance the same needed corrective action as was given to the front entrance unnecessarily created or exacerbated an obvious ice hazard on the morning of January 9, 2007.  In considering the "storm in progress" defense, it must be remembered that whatever storm was in progress that morning was in progress over <u>both</u> the south entrance and the front entrance.  The fact that at least five people slipped and fell at the south entrance and no one was reported to have fallen at the front entrance could reasonably lead a jury to find that it was not the "storm" that caused Merges to slip and fall, but rather it was the failure to alleviate or correct a known winter risk of ice which Aramark had been warned about.  <u>Englerth v. Penfield Cent. Sch. Dist.</u>, 85 A.D.3d 1714 (4th Dept. 2011)(Trial court's grant of summary judgment on basis of storm in progress reversed where issue of fact existed as to whether the alleged condition formed prior to commencement of the storm in progress and was therefore a preexisting hazard, rather than the product of a storm in progress and whether defendant contributed to the creation of the hazardous condition); <u>Pipero v. New York City Transit Auth.</u>, 69 A.D.3d 493 (1st Dept. 2010)("[E]ven if a storm was in progress at the time of the incident, plaintiff's testimony and defendant's own records raise issues of fact as to whether defendant gratuitously and negligently performed snow and ice removal operations and as to

whether its failure to place sand or salt on the stairs created or exacerbated a dangerous condition."); Schuster v. Dukarm, 38 A.D.3d 1358 (4th Dept. 2007)(grant of summary judgment on basis of storm in progress reversed where plaintiff raised an issue of fact whether she slipped on ice that had accumulated prior to the storm and whether "the ice was a preexisting hazard and was not created by the storm in progress so as to defeat defendants' motion")(citation omitted); see also Imperati v. Kohl's Dep't Stores, Inc., 91 A.D.3d 1111 (1st Dept. 2012)("Simply stated, questions abound as to how the conditions that caused plaintiff's fall were created and, as a result, plaintiffs' motion for summary judgment was properly denied."). Having found the existence of triable factual issues as to Aramark's conduct in relation to Merges's fall, the granting of summary judgment is not appropriate.


### Conclusion

For the reasons set forth herein, Aramark's motion for summary judgment (Docket # 32) is **denied.**

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge


Dated: March 30, 2012
Rochester, New York

23